The case is Richard Graham v. Deere & Company, 2017, 1252 and 53. And it looks like we have a return of Graham v. Deere, but not quite. Mr. Coffin. May it please the Court. Deere contends, and the Board found, that the substitution of the Cleveland probe assembly with the completely flexible spring 38 for the rigid Chmielewski sensor arms 236 and 237 is the simple substitution of one known element for another that achieves a predictable result. It is not. It replaces predictable with unpredictable. According to Chmielewski at A1894, column 39, lines 40 through 49, quote, normal use can bend the sensing arm of the sensors 236 and 237 and actually change the output signal values even though the sensors are still functional. Thus, the sensors should be recalibrated at the beginning of each shift or day in order to ensure that the sensory signals are correct. Deere quoted this passage on page 12 of its appellate brief, but it left out, quote, and actually changes the output signal values even though the sensors are still functional, unquote. Why did Deere leave that passage out? Because it shows why a person of ordinary skill in the art would not be motivated to combine Chmielewski and Cleveland. Chmielewski teaches that any bend in the Cleveland spring 38 would, quote, actually change the output signals, unquote, if substituted and make the signals incorrect. Cleveland spring 38 is designed to be bent backwards when in use with minimum downward force as shown in figure 7 at A1904. So little downward force that the force of the spring cannot make a furrow within a furrow, and that's at A1906, column 4, 24 through 26. Consequently, Cleveland spring 38 would have to be calibrated if it's going to be combined with Chmielewski and calibrated as the combine traverses the field to ensure accuracy. Chmielewski does not teach calibration of the unpredictable bends of a completely flexible spring. That's not within the skill of the art? Pardon me? That's not within the skill of the art? No, it isn't. It is not in the skill of the art. In fact, calibration did not come up until the reply brief in the IPR, and it came up because Mr. Matusik testified that the potentiometer, quote, the potentiometer would be incapable of accurate height detection because the variation of the bend of the spring would change the amount of rotation detected by the potentiometer, unquote. In response to that, at A846, Deere then said, well, then it could be calibrated, and that it's routine calibration, and calibrating the bend of a spring is not routine calibration. There is no evidence, let alone substantial evidence, no evidence that a bending spring can be calibrated as a combine moves through the field when that bending spring is part of a height sensor. So we have a record that's totally devoid of a central element of proof to prove that this combination could work. Can you explain maybe one greater level of detail, what calibration means? Calibration is set out in the Chmielewski patent for the rigid sensor arms at column 40, lines 30 through 60. Basically what it involves for a rigid sensor arm is setting a maximum height value, that is when the arm is totally off the ground so that it's not sending a signal. That's the maximum height value. It goes down then to when the arm is totally on the ground, that sends a minimum height signal. At column 41, at A1895, it basically says that the relationship then is functionally linear. In between, the output signals are known to be a certain height off the ground. At A1895, column 39, at the bottom, lines 66 and 67, it actually basically says it measures height. It measures height on the assumption that it's a linear relationship. When you inject a completely flexible, bendable spring, there's no linear relationship. Not only that, the way Cleveland operates, Your Honor, is its downward force is intended to keep it at the bottom of the furrow. But not dig a little furrow in a furrow. But not dig a furrow in a furrow. When it's not in a furrow, the specification says that it will roll with the terrain. So not only do you have a bending force, as Figure 7 shows, at 1906, backwards, when the terrain changes, the bearing member 44 will roll down the hill, so you have a lateral deflection too. There's nothing in Chmielewski that teaches that. That's our position. It's impossible, but regardless, there's no evidence, let alone substantial evidence, to support that. What's impossible? It's impossible to calibrate a bending spring like Cleveland as you go through a field. Think of it in... Well, I thought the patent here required a flexible spring. I'm sorry, Your Honor? I thought the patent required a flexible... The patent requires a spring that is flexible when it meets objects that would cause breakage to the vehicle. That's what the specification teaches. In fact, at 25, 27... I don't understand your statement that it's impossible to calibrate a flexible spring. In the context of a height sensor, there is no way to... I don't even have to prove it's impossible, Your Honor. There's no evidence that it can be done. I'm confused. I thought the patent required a flexible arm. The Graham patent requires a generally linear flexible arm. Right. So how is it impossible to calibrate that? Because the generally linear flexible arm in operation, and this at pages 25, 27, and 28, Deere acknowledges, and Mr. Lucas testified, that that spring, and a person of ordinary skill in the art would know this, has to be sufficiently rigid so that it can accurately detect height. That's what is taught in the patent in multiple places. In other words, you're saying that the spring in Cleveland is flexible but too flexible? Yes, Your Honor. Think of it as a slinky. When you say spring and it's flexible, it doesn't mean that a slinky is going to be useful in every context. So it's possible to calibrate a flexible spring, but you say not the one that's shown in Cleveland. No, the calibration in Graham is the calibration of a generally linear flexible arm, which is generally linear as it travels through the field. Because each element there refers to that. Does the patent tell you how to calibrate? In a general way, yes, Your Honor. What do you mean in a general way? Well, it doesn't go into the same specificity as the Chmielewski patent. So it's relying on the knowledge of someone skilled in the art as to how to calibrate. As to the spring that meets, the preloaded flexible spring that meets, that works in the Graham patent, yes. I think at this point I want to just close up with the issue of calibration. There is no evidence concerning calibration. Not only that, Deere in reply did not make any statement that a person of ordinary skill would know how to calibrate the Cleveland spring when combined with Chmielewski. And further, it did not say that one of ordinary skill would actually do it. So there's no how could you do it, and one of ordinary skill, who was a service person who's worked 10 years with combines, would actually know how to do it. And there's no evidence that the Chmielewski calibration would allow for that calibration. I'd like to turn just briefly to the issue of rotation of the Cleveland probe assembly 90 degrees. And I want to focus on the finding of fact that the board made when it determined that it was going to, that you could rotate it and one would do that. And basically what the board did is the board came to the incorrect finding that the purpose of the Cleveland probe assembly is to detect elevation changes, that is from the deepest portion of the furrow. And that purpose remains unchanged from Cleveland to Chmielewski. But that's not what Cleveland teaches. And it's really quite apparent when you look at figure six, you will see that the Cleveland arm and the spring is to be in a vertical attitude in alignment with the bottom of the furrow. The bearing member 44 stays in the bottom of the furrow. When the vehicle moves laterally, in other words when the driver doesn't keep it parallel with the furrows, the bearing member stays in the bottom of the furrow, but the top of the probe assembly moves laterally and that causes the indicator light to go on while the bearing member is in the bottom of the furrow. The bearing member never comes out of the bottom of the furrow. In fact, at A1906 column four, lines 39 to 54, it basically says that the operator knows immediately the moment that the probe moves out of vertical alignment so that the operator can take immediate action to correct it while the bearing member is in the bottom of the furrow. So consequently, Cleveland does not teach detection of changes of elevation. And what the board did was use that teaching of changes in detection of changes in elevation to create a motivation to take the Cleveland probe assembly and put it on Chmielewski and rotate it because you were using it the same way. But that's not what occurs. The Cleveland probe assembly is a lateral detection sensor. If it were rotated 90 degrees as Cleveland, it would destroy the intent, its purpose. And so when you put it on Chmielewski and rotate it, you're destroying the purpose of Cleveland when Cleveland's in its ordinary state. Of course, the purpose of Cleveland isn't the point. The question is whether it would be obvious to add it to Chmielewski and be beneficial. Well, there are two issues to that. And the first is that is there a motivation or reason to combine? And our position is there isn't. As my time is running down, I want to get to one last issue, and that is the reasonable expectation of success. Graham's position is that Deere had to establish a reasonable expectation of success at that combining Cleveland with Chmielewski would allow the combination to work. There is nothing in the record that supports that. Deere never made an argument, never presented evidence, and there was no finding. And our position is that that's an issue that simply hasn't been proved, and therefore there's a total failure, and Graham should win, and the case should be reversed. Second, if the court gets to that issue, for the same reason that I talked about on the motivation to combine, there is no ability to calibrate at spring. There's no proof of that. So therefore, Deere should lose on that issue, and the case should be reversed. In addition, we have two other arguments regarding rotation and sizing that also go to that issue and demonstrate that there's no reasonable expectation of success. On the sizing issue, the board concluded that there's no limitation on sizing and robustness, but there is an actual limitation because this combination has to fit in a small area at the end of a corn divider, and so there's an inherent physical limitation because this is going on a Deere divider and has to fit in that area. So that limitation exists. The evidence is that it couldn't be combined to fit there, and that's an additional reason. I'd like to reserve the remainder of my time, if I may. Thank you, Mr. Cotter. Mr. Stokeski? Good morning. Substantial evidence supports the finding of obviousness by the board below, and I'd like to go right to the substantial evidence and the point that Appellant makes about calibration. First, calibration was an issue in Claim 10, and Claim 10 was found to be obvious by the board. That was not appealed. Calibration was found obvious based on Chmielewski. There is no statement of calibration in Claim 1. Claim 1 does not require calibration. The Appellant discusses the spring and the character and nature of the spring as if it were something unusual and a posse would not be able to deal with it. The spring in Cleveland is not described as a slinky. It's not described as springy. That language is not used in the record by the expert, Mr. Matusik, for the Appellant. The spring in Cleveland is described this way. At 1905, Column 1, Line 75, complete flexibility so that it can deflect out of shape, moving over to Column 2, and be left in such a state for long periods of time without losing its ability to snap sharply back into a proper working attitude. I suggest a posse would know that a slinky doesn't snap sharply back. Also, it continues at Column 2 where it describes that spring. It's flexible. I'm now at Line 60. Flexible along its longitudinal axis, adapted to maintain a straight configuration in absence of bending forces being applied thereto. The combination was to take the spring from Cleveland and apply it to Chmielewski. Why? Because the problem to be solved was the shaft was breaking. If the shaft was breaking, make it flexible. And that's what was found in Cleveland, a flexible shaft. The issue of preloaded, and I'm glad that Appellant brought it up, is really one of the key issues in determining what's required by Claim 1. Claim 1 does not say it has to be calibrated. Claim 1 doesn't say anything about the spring other than it needs to be a preloaded flexible spring. There was no dispute in the claim construction of what preloaded meant, and the claim construction was requiring a force to bend or flex. With that definition, the spring only has to require a force to bend or flex. We asked the inventor what he thought of that as a preloaded spring or not, and whether it would be successful for accurate height detection. And the inventor made it clear that all you need to do, and I'll refer to his testimony in the record, that there could be accurate height detection from a preloaded spring. I'm now referring to the appendix at 3116. Does the use of a spring and a sensor arm impact the ability of that arm to accurately detect irregularities in the ground? Answer, if it meets the requirements of being preloaded properly, it can accurately tell the changes in the ground. And question, preloaded, just so we're crystal clear, means the spring, preloaded means you must apply a force to the spring in order to bend it correct. That's all that needs to be done, and a person of skill in the art can deal with a preloaded spring. As for GRAM and GRAM's patent itself, I think one of the panel members asked about calibration in connection with GRAM's patent. GRAM's patent deals with calibration at column 5, starting at line 37, and simply explains, very briefly, calibration is done by appropriate rotation of each rotation sensor about its associated shaft using the four minute slots, and it's done in a full down position. Chamblowski has columns of a description of how you do calibration if calibration needs to be explained any further than what the inventor said in the inventor's patent. So, again, it's a red herring. It's not something that's required by the claim. As for the other points that Helen made, I think the theme of this case is, from our perspective, appellant has been changing the combination that was presented by Deere to the board and relied upon by the board to come up with something that appears to be inoperative. So, the 90 degree rotation. The record evidence is clear, and Mr. Matusik admits that a 90 degree rotation, well, he says it can be done. He doesn't say it's outside the skill of a poseidon. And what he says about the 90 degree rotation and further issues, I think, is very important for us to remember. Mr. Matusik's declaration starts at 2835, and there was some discussion of this in the brief, paragraph 43, where he says that it could be reoriented at 30 degrees, this Cleveland spring, and it could function as a vertical height detector. But he quibbles with the fact that it might take significant modification and trial and error, and then it wouldn't result in some of the functions of the claims, not the features of the claims, not the language of the claims. And if you go to paragraphs 86 to 89, what you find out is, in order to construct something, this is at the appendix 2863 to 64, in order to say this will not be small enough, what Mr. Matusik does is he takes features from the Cleveland patent, features that are shown in figure two, but are not relied upon by DEER and not relied upon by the board, features such as an item 62, a pin 64, and slots 28, and that's the basis for him saying that it would not be robust enough. That's the evidence. That's countered with the evidence from Mr. Lucas saying it would be. And second, he says it couldn't be miniaturized in a fashion to make it sufficiently robust. He does not dispute, in paragraph 88, that it could be miniaturized, only contending if you had all these other features, it might not be robust enough. Mr. Lucas says it was. This is a simple question of weighing the evidence. And the court, we suggest, did not re-weigh the evidence, which was found and discussed thoroughly in the 70-some page opinions of the board. I think the last thing about robustness I do want to mention, in addition to adding these unnecessary elements, there is a claim, again, there's a dependent claim, that deals with shielding the elements, as a placido would, Claim 29, and the board found that Claim 29 was obvious. Remember, the only claims on appeal are 1 and 27. Claim 29 was not appealed. That obviousness decision stands, and it says, if you have some issues where dirt is getting in, the claim itself, 29, says for shielding from dirt and debris, you add a guard plate. That's what a placido would do. If the court has no further questions, I'll submit without any further argument. Fine, thank you, Mr. Ruski. Okay. Mr. Carter, we'll give you two minutes for rebuttal. I want to address a couple of the issues that Mr. Ruski brought up, and one is kind of the changing positions of Deere, based upon what we started out in the petition and what the evidence was there and now where they are here. And I refer to A1344 paragraph 138, and this is of the Lucas Declaration. And Mr. Lucas is trying to justify replacing the contact sensors of Chmielewski with the Cleveland probe assembly in the Cleveland Spring 38. And he states that it would have amounted to nothing more than a simple substitution of one known element for another. A placido would have understood that replacing the contact sensor 236 and 237 of Chmielewski with the sensor arm of Cleveland would have predictably resulted in a sensor arm that had improved flexibility due to the helical spring, yet would have still been sufficiently rigid so as to allow the accurate measure of the header height, unquote. So that demonstrates that Deere's own expert understood that it had to be sufficiently rigid after reading the patent and the claims, and that a person of ordinary skill would have understood that. So the idea that now we read out any sort of limitation on the flexibility, which means literally that you can have a slinky be your arm, because a slinky does come back. And further, when Mr. Roeske talks about the arm, it snaps back when not in use. It's not an elongated linear shaft when it's in use, which is what elements one and two of claim one and element two of claim 27 say. So what is happening here is it's a switch in time, no pun intended, where the arm of Cleveland is analyzed when it's not in use. And the arm described in claims one and claim 27 is straight in use, flexible only when it meets an obstruction so it won't break, which is reflected in the specification. So that's one issue. Your time has expired, Mr. Carter, so we will take the case. Thank you, Your Honor.